Filed 5/7/25  P. v. Cardoza CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>    v.<br><br>JOHN MANUEL CARDOZA, JR,<br><br>       Defendant and Appellant. | C099873<br><br>(Super. Ct. No. CRF2202384) |

A trial court found defendant John Manuel Cardoza, Jr., guilty of several counts alleging various charges related to molesting his daughter, J.  The trial court sentenced defendant to a determinate term of 31 years consecutive to an indeterminate term of 70 years to life.  On appeal, defendant argues the trial court lacked sufficient evidence to find him guilty of all counts.  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In early 2015, when J. was about five years old, she and defendant began living with defendant's then romantic partner D. in a trailer home.  Defendant and D. had two children together, and J. grew close to D. and her stepsiblings.  In February 2021, D. broke up with defendant.  Defendant moved and D. continued to live in the trailer home.  After defendant moved, he became engaged to another woman and they moved in together.  J. alternated

1

between living with D. and living with defendant and his fiancée approximately every other week.

In October 2022, J. wrote a letter to D. saying defendant had been sexually abusing her. The next day, D. took J. to the sheriff's department to report the sexual abuse, and a community service officer conducted a child forensic interview with J. The week after the interview, at the direction of a detective, D. told defendant that she was taking J. to a medical clinic to be examined. Defendant said he would go too, and when he arrived at the clinic, police officers arrested him.

The following facts are based on the letter J. wrote to D., J.'s statements in the child forensic interview, and J.'s testimony at trial. When J. was eight, defendant began forcing her to perform sexual acts with him. He threatened to hurt D. or her stepsiblings if J. told anyone about the abuse. When D. was out of the home running errands, defendant showed J. pornographic videos on his phone. This happened "a couple times a week." While they watched the videos, defendant forced J. to masturbate him until he ejaculated. If J. refused to watch the videos or touch his penis, defendant would slap her across the face. When J. was nine and one-half years old, defendant began forcing J. to orally copulate him once or twice per week. Even though J. would cry and felt scared, defendant would "push [her] head to do it" until he ejaculated.

Sometimes defendant told J. to remove her clothes or he removed them and squeezed her breasts with both hands while he forced her to perform other sexual acts. When J. was nine or ten years old, defendant started to rub his "[penis] in between [her] legs." While defendant lay down, he would force J. to sit on his penis and "slide up and down [on] it" with her vagina. When defendant would try to put his penis inside J.'s vagina, she fought him but he would not stop. During one incident, defendant made J. lie on her back, lifted her legs up, and rubbed his penis "in between" her "[bottom] front half."

After defendant moved out of the trailer home, defendant continued to rub his penis on J.'s vagina while she stayed with him when his fiancée was not at the house. At the new

2

house, defendant forced J. to orally copulate him between four and seven times and sometimes touched her breasts while he forced her to perform other sexual acts. When J. was 10 or 11 years old, defendant started to rub J.'s anus with his penis. In August 2022, defendant inserted his penis into J.'s anus. J. screamed and tried to fight defendant but he slapped her in the face and on her arm. During the struggle, J. fell off the bed and hit her face on the bed frame. When defendant pulled his penis out of J.'s anus, he wiped off his penis with a towel and told J. to shower. During the week prior to the child forensic interview, defendant forced J. to orally copulate him when he last had custody of her.

An amended information charged defendant with: sexual intercourse with a child 10 years of age or younger when J. was 10 years of age at the trailer home (Pen. Code,[1] § 288.7, subd. (a); count 1); aggravated sexual assault of a child, oral copulation, on or about October 17, 2022 (§ 269, subd. (a)(4); count 2); oral copulation with a child 10 years of age or younger for the first time when J. was between nine and one-half years of age and 10 years of age (§ 288.7, subd. (b); count 3); oral copulation with a child 10 years of age or younger for the second time when J. was between nine and one-half years of age and her 11th birthday (§ 288.7, subd. (b); count 4); committing a forcible lewd act upon a child in August 2022 (§ 288, subd. (b)(1); count 5); committing a forcible lewd act upon a child by touching J.'s breasts when she was 10 years of age (§ 288, subd. (b)(1); count 6); committing a forcible lewd act upon a child by touching J.'s vagina with his penis when she was 10 years of age (§ 288, subd. (b)(1); count 7); and continuous sexual abuse between J.'s 11th birthday and September 30, 2022 (§ 288.5, subd. (a); count 8). The information alleged the following aggravating factors as to counts 5 through 8: the offenses involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court,[2] rule 4.421(a)(1)); the

---

[1] Undesignated statutory references are to the Penal Code.

[2] Undesignated rule references are to the California Rules of Court.

victim was particularly vulnerable (rule 4.421(a)(3)); and defendant took advantage of a position of trust (rule 4.421(a)(11)).  The information alleged the following aggravating factors as to all counts:  that defendant illegally interfered with the judicial process (rule 4.421(a)(6)) and defendant engaged in violent conduct (rule 4.421(b)(1)).

At trial, the People submitted the letter J. wrote to D. and the transcript of her child forensic interview into evidence.  J. then testified that defendant's penis never entered her vagina.  D. testified that J. once reported she had a "sexual incident" with D.'s biological son, who sometimes visited them on the weekends.  According to D., J. got in trouble at the end of 2020 for sending a topless photo of herself to someone.  Although D. never saw any child pornography in the home, D. testified defendant always kept his phone in his pocket.  Although D. never suspected defendant was abusing J., she noticed J. became withdrawn in the time leading up to when J. wrote the letter to her.  When it was time to exchange custody of the children, J. would cry and tell D. that she did not want to go to defendant's house.  According to D., defendant was strict and stern with J.  D. also testified that in August 2022, on a day that defendant dropped J. off at school while she was staying with him, D. noticed that J. was "walking funny" when J. came back to the trailer home.  J. said she "hurt her bottom" but said she did not know how.

Both J. and defendant's fiancée testified that defendant's fiancée, not defendant, was the one who would drop J. off at school, contrary to D.'s testimony that defendant dropped J. off at school.  Defendant's fiancée testified she trusted defendant with the children, and also that defendant was never left alone with them.  Defendant's fiancée, his friend who lived with him temporarily, and his uncle, who frequently interacted with J., testified that J. never showed any signs of discomfort around defendant.  A woman who was previously engaged to defendant testified that he was good with children and she trusted him around her own children, one of which she shared with defendant.

Licensed psychologist Dr. Donald Siggins, who performed psychological evaluations on defendant, testified for the defense as an expert witness.  According to Dr. Siggins,

4

defendant tested within the normal range of personality scales, which was inconsistent with how a person likely to be a sex offender would test. However, Dr. Siggins testified it was possible for a pedophile to test within a normal range. Defendant also submitted a clinic's report of a physical exam conducted on J. approximately two months after the last act of molestation defendant committed against J. The report reflected a lack of trauma to J.'s anus and that J.'s hymen was intact, but a detective testified that such exams are typically done within 72 hours of a purported incident when collecting evidence.

Finding J. to be "wholly credible," the trial court found defendant guilty of all charges and found true all aggravating factors.[3] Before sentencing, defendant filed a motion for a new trial, which the court denied. At sentencing, the court imposed an aggregate term of 31 years plus 70 years to life: 25 years to life for count 1, 15 years to life for counts 2 through 4, the lower term of 5 years for counts 5 through 7, and the upper term of 16 years for count 8.

## DISCUSSION

On appeal, defendant contends there was insufficient evidence to support the convictions because the testimony of J. and D. was "fraught with inconsistencies" or "highlighted [defendant's] innocence." Defendant does not assert that there were inconsistencies between J.'s testimony and the statements she made in her letter to D. and the child forensic interview. Neither does defendant argue the evidence in J.'s testimony and statements alone could not support the convictions. Rather, defendant argues other evidence at trial outweighed or contradicted J.'s testimony and statements.

Specifically, defendant argues that the testimony of other witnesses that J. seemed comfortable around defendant and that they trusted him with children, J.'s clinic exam showing her hymen was intact and anus did not show trauma, and defendant's psychological

---

[3] Defendant waived his right to a jury trial on the case-in-chief as well as to the aggravating factors.

5

exam showing he was in the normal range contradicted J.'s statements about the abuse. Defendant further argues that J. had a motive to fabricate her allegations because he was strict with her and she was previously involved in sexual incidents with other people.**4** Next, defendant argues his transparency and cooperativeness during the investigation demonstrates his innocence. Lastly, defendant argues D.'s testimony that she saw J. "walking funny" after defendant dropped J. off at school was contradictory to both J.'s and defendant's fiancée's testimonies that defendant's fiancée was the one who would drop J. off at school.

The People respond that it is the exclusive function of the trial court to assess the credibility of witnesses and draw reasonable inferences from the evidence. Moreover, the People assert that the testimony of a single witness, J., is sufficient to sustain the convictions and that no other evidence rendered J.'s testimony a physical impossibility or apparently false. We agree with the People and conclude sufficient evidence supports the convictions.

### A. Standard of Review

The relevant inquiry governing a challenge to the sufficiency of the evidence " 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, italics omitted.) The reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We "presume in support of the judgment the existence of every fact the [fact finder] could

---

**4** To the extent defendant argues J.'s victim impact statement at sentencing also reflects that she had a motive to fabricate her allegations, we do not consider the statement as it was not admitted into evidence during the trial.

reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Moreover, "[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*Ibid.*) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Ibid.*) "[T]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.) In addition, a trier of fact is entitled to reject some portions of a witness's testimony while accepting others. (*People v. Davis* (1957) 48 Cal.2d 241, 248.)

*B. Analysis*

Defendant's argument on appeal essentially asks this court to resolve credibility issues and evidentiary conflicts, which we cannot do. (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) The trial court found J. to be a "wholly credible" witness and believed that defendant abused her despite his fiancée's testimony that he was never alone with the children. Additionally, the trial court believed J. despite allegations of sexual incidents with other people and evidence of a possible motive to fabricate her accusations.

Further, none of the evidence that defendant points to renders J.'s testimony or statements physically impossible or inherently improbable. (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) Other witnesses' testimony that they never noticed J. being uncomfortable around defendant and that they trusted defendant around their own children did not make it physically impossible or inherently improbable that defendant secretly harbored a sexual interest in J. and sexually abused J. when no other adults were present. For example, the fact defendant kept his phone in his pocket explained why D. never saw any child pornography in the trailer home. A detective's testimony that clinical exams are

7

typically conducted within 72 hours of a purported incident explained how the physical exam conducted approximately two months after the alleged anal penetration showed no trauma to J.'s anus. The fact that the physical exam showed J.'s hymen was still intact did not preclude the possibility that defendant did not penetrate J.'s vagina deeply enough to break her hymen. Defendant's cooperation during the investigation did not make J.'s allegations physically impossible or inherently improbable as it is just as likely defendant cooperated to not appear guilty or to potentially influence J. in some way. Thus, the evidence adduced through J.'s testimony at trial, the statements she made in her child forensic interview and her letter to D. are sufficient to uphold the trial court's judgment. (*People v. Leigh*, *supra*, 168 Cal.App.3d at p. 221.)

### DISPOSITION

The judgment is affirmed.


  /s/
WISEMAN, J.*



We concur:



  /s/
ROBIE, Acting P. J.



  /s/
RENNER, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.